# Commonwealth *v.* Divomte, Appellant.

*Criminal law—Murder—Degrees—Definitions—Intention — Erroneous charge—Whether error was harmless.*

1. The only distinction between murder of the first degree and of the second is that in the higher grade the intent to take life is an essential element; while in the latter it is not.

2. Where on an indictment for murder the defendant sets up self-defense, a conviction in the first degree will be reversed on appeal, where the trial judge in his charge, after defining correctly the degree of murder of the first degree, murder of the second degree and manslaughter, immediately charges that "if the Commonwealth

has failed in this case to show that the killing, which is not denied here, was done with premeditation, then the verdict of the jury would drop to the next degree, and if premeditation or malice aforethought is lacking, then it would be murder of the second degree, and not murder of the first degree."

3. The prisoner was entitled to a clear, unequivocal and unambiguous instruction, that if he struck the fatal blow with no other intent than to inflict bodily injury upon the man slain, his offense would rise no higher than murder of the second degree.

4. Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or a contradictory one which correctly states the law on the point involved, unless the erroneous instruction is expressly withdrawn from the jury; assuming, as is their duty, that the instructions are all correct, they may as readily follow the incorrect as the correct.

5. A defendant in a homicide case has no standing in an appellate court to complain of an erroneous instruction unless the error contributed to the result reached by the jury.

Argued Oct. 1, 1913.  Appeal, No. 82, Oct. T., 1918, by defendant, from judgment of O. & T. Cambria Co., June T., 1917, No. 11, on verdict of guilty in case of Commonwealth v. Camolite Divomte.  Before BROWN, C. J., STEWART, FRAZER, WALLING, SIMPSON and FOX, JJ.  Reversed.

Indictment for murder.  Before STEPHENS, P. J.

At the trial the prisoner set up self-defense to the killing of John Cononie.

Verdict of guilty in the first degree, upon which sentence was passed.

*Error assigned,* among others, was (4) the portion of the charge quoted in the opinion of the Supreme Court, and there held to be erroneous.

*C. R. Myers,* with him *L. S. Jones,* for appellant.— Without premeditation and malice aforethought, there could be no conviction for murder, therefore, the statement of the court to the effect that "if premeditation or malice aforethought is lacking, then it would be murder

of the second degree and not of the first degree," would confuse the various degrees of homicide in the minds of the jury by taking away from their consideration the intermediate degree, thus leaving to their deliberation the option of either fixing the degree of guilt as either first degree murder or second degree murder as above defined, which in reality constitutes manslaughter.

*D. P. Weimer,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 4, 1919:

The appellant is under conviction in the Oyer and Terminer Court of Cambria County of the crime of murder of the first degree committed upon one John Cononie. The one and only answer made to the indictment charging him with the crime was that the killing was committed in self-defense. It is in the light of this fact we are to say whether error was committed on the trial of the case in the instruction given the jury by the trial judge as to the law governing; and, if error be found, whether it was so prejudicial to the appellant as to call for a reversal of the judgment. The complaint is to be found in the fourth assignment of error, the only assignment which calls for consideration here; the other assignment being wholly without merit may be dismissed without discussion. Immediately preceding the portion of the charge assigned for error, the following instruction was given the jury, and it is to be commended as an impartial and correct exposition of the law: "If you find beyond a reasonable doubt, that the defendant killed the deceased wilfully, deliberately, and premeditatedly, and was fully conscious of what he was doing, while possessed of such a state of mind as to clearly understand and prepare for the commission of the act, with intent to take life, and with malice aforethought, you can convict him of murder in the first degree. If there was no intention to take life, and the only purpose was to inflict bodily harm, the other elements being present, such

as malice aforethought, the offense would be murder of the second degree. If there was no malice, it would be neither of the first nor murder of the second degree; it would be manslaughter."

Immediately following this instruction came this, "If the Commonwealth has failed in this case to show that this killing, which is not denied here, was done with premeditation, then the verdict of the jury would drop to the next degree; and if premeditation or malice aforethought is lacking, then it would be murder of the second degree, and not murder of the first degree." In the earlier instruction, preceding by only a sentence or two, the trial judge had given the jury to understand very properly that the one and only distinction between the grades of murder of first and second degree is that in the former an intention to take life is an essential element, and when this element is lacking in the case of the Commonwealth, though all the other elements of murder of the first degree be established beyond reasonable doubt, the defendant's guilt would be murder in the second degree. In the later instruction they were told, if premeditation or malice aforethought were lacking the offense would be murder of the second and not of the first degree. Certainly with these elements lacking, the offense would not be murder of the first degree and no more could it be murder of the second degree, since the latter includes every element that must enter in the murder of the first degree except the intention to kill. We need not dwell longer on this feature of the case; the error in the instruction is too apparent to require comment. We turn at once to another feature; conceding the error, did it contribute to the result? Except as it did, appellant is without standing to complain in an appellate court. This is the doctrine of all our cases; that it may be less rigorously applied in some other jurisdiction is nothing to the point. The policy of our courts is in that regard too well established to be open to question. Our attention has not been called to a single case,

and our examination of the reports has disclosed none, where a judgment and conviction for a homicide has been reversed in this court on the ground of error in the charge, except where it appeared reasonably clear that the error committed had been prejudicial to the person charged, in other words, that it had contributed to the result reached by the jury. Now, how stood this case, keeping in mind the issue being tried: The plea was self-defense, and with respect to the law governing such defense the instructions given the jury are not complained of; these were full, ample and correct. Suppose the jury were to conclude from the evidence that the plea was not sustained and they were to reject it, as they did, what remained for their consideration? A felonious killing, done with or without an intent to take life, as the case might be upon the evidence. The intention to kill, once established, beyond reasonable doubt, the crime would be murder in the first degree; lacking the intent to kill, the other elements being present, it would be either murder in the second degree or manslaughter. Under the instructions complained of the jury was virtually denied, the right which it undoubtedly had in law, to find a verdict of murder of the second degree; that is to say, that the blow delivered by the defendant on the person of the deceased, though fatal in its results, was not given with intention to do more than inflict bodily harm. In the earlier part of the charge above quoted, the trial judge correctly instructed that, "if there was no intent to take life, and the only purpose was to inflict bodily harm, the other elements being present, such as malice aforethought, the offense would be murder of the second degree," but, when in summing up, as though with explanatory purpose, he destroyed all the effects of the earlier instruction by directing that if premeditation or malice aforethought be lacking, then it would be murder in the second degree and not murder of the first degree, overlooking the vital fact that the only distinction between murder of the first degree and of the second is that

in the higher grade the intent to take life is an essential element while in the latter it is not. The effect of this instruction, if observed by the jury, would be to deny to the defendant the right to have the jury pass upon the one distinguishing question of intent, upon the determination of which depended whether his life should be forfeited. While we cannot say that it was because of the erroneous instruction that the jury found a verdict of first degree murder, we do know that if they observed the erroneous instruction as to the elements which entered into the second degree murder, they could not have given consideration to this one distinguishing element, which, from a reviewal of the case would seem to have been the defendant's sole reliance. Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or contradictory one which correctly states the law on the point involved, unless the erroneous instruction is expressly withdrawn, for the jury, assuming as is their duty, that the instructions are all correct, may as readily follow the incorrect as the correct: Com. v. Gerarde, 145 Pa. 289. To like effect is Com. v. Molten, 230 Pa. 399, where, in an opinion by the present Chief Justice, this language is used, "But it is contended by the Commonwealth that inasmuch as the trial judge, in a portion of his charge immediately preceding the language complained of by the assignment of error, and in his answer to the second and third points submitted by the prisoner, correctly stated the law as to the degree of proof required to establish insanity as a defense, the jury must have fully understood the measure required, and the judgment should not therefore be reversed. To this we cannot assent. The language complained of was manifestly erroneous, and the words were spoken for the guidance of the jury upon whom the law had imposed the grave responsibility of determining whether one of their fellow citizens should live or die. Who can tell which instruction they followed?......It is enough to know in such a case that an erroneous instruc-

tion was of a character likely to mislead the jury on a point vital to the defendant." This appellant was entitled to a clear unequivocal and unambiguous instruction that, if he struck the fatal blow with no other intent than to inflict bodily injury upon the man slain his offense would rise no higher than murder of the second degree. This the jury did not receive, and for this reason the assignment of error is sustained and the judgment is reversed with a venire de novo.