Commonwealth *v.* Gibbs, Appellant.

Argued October 2, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

reargument refused January 12, 1951.

*Thomas D. McBride,* with him *Michael von Moschzisker* and *W. Hensel Brown,* for appellant.

*John Milton Ranck,* District Attorney, with him *William C. Storb,* Assistant District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, November 20, 1950:

On January 10, 1950, Marian Louise Baker was brutally slain by being beaten to death with a lug wrench. Eight days later Edward Lester Gibbs, defendant, confessed the killing. Thereafter, he was indicted in Lancaster County, tried by a jury, and convicted of murder in the first degree with the penalty fixed at death. Prior to his bringing this appeal, his motion for new trial was denied and sentence was imposed in accordance with the verdict.

At the time of the killing, defendant, a married war veteran twenty-five years of age, was a student at Franklin & Marshall College, Lancaster, Pennsylvania.

In the early afternoon of January 10, 1950, he was in downtown Lancaster when he saw Miss Baker, an employe of the college. He offered to drive her back to the campus in his car and she accepted. However, instead of returning directly to the college, they rode out of town and into the open country. When they reached an isolated spot several miles from the city she commented on the view and defendant stopped the car so that they both might enjoy it. While sitting there he suddenly reached over and began choking her. She broke away and got out of the car. He followed her and after choking her again, he returned to the car, unlocked and opened the luggage compartment, removed the lug wrench, and beat her over the head with it until she was dead. He then left but later returned to hide the body and remove any incriminating evidence. The body was not discovered until four days later.

On January 18, 1950, defendant admitted committing the crime and on that same day he signed a statement setting forth the facts as we have synopsized them here. Neither at the trial nor at any other time did he deny the truth of that confession and substantially all of the facts contained in it were verified by the independent investigation of the Pennsylvania State Police.

Under these circumstances, defendant concedes, as he must, that he properly deserves to be punished under the law. He contends, however, that because of the admission of certain evidence and because of certain alleged errors in the charge, he was precluded from having the jury fairly determine the degree of his guilt.

Two articles of the victim's clothing and several photographs of the body were introduced in evidence over defendant's objections. It is his position that these exhibits were of no value as evidence and were introduced solely to inflame the jury. That question has been raised in numerous cases and the law in respect

to inflammatory evidence has become well settled. So long as the evidence is helpful to the jury in their investigation and deliberation and not introduced solely to arouse their emotions, the trial judge may, in the exercise of his sound discretion, admit such exhibits but the reason for their admission must be carefully explained to the jury: *Commonwealth v. Davis,* 363 Pa. 91, 95, 69 A. 2d 123; *Commonwealth v. Wentzel,* 360 Pa. 137, 148, 61 A. 2d 309; *Commonwealth v. Chavis,* 357 Pa. 158, 170, 53 A. 2d 96; *Commonwealth v. Dreamer,* 324 Pa. 220, 224, 188 A. 117. In the instant case the photographs were introduced to show the position and condition of the body and the extent of the wounds. The clothing was introduced for the purpose of showing motive. All of the exhibits were used extensively by the medical experts to illustrate their oral testimony. These were all proper purposes: *Commonwealth v. Simmons,* 361 Pa. 391, 398, 65 A. 2d 353; *Commonwealth v. Peronace,* 328 Pa. 86, 94, 195 A. 57; *Commonwealth v. Winter,* 289 Pa. 284, 289, 137 A. 261. Therefore, the trial judge did not abuse his discretion in admitting these exhibits into evidence subject to the precautionary instruction, which he gave, that the jurors were not to allow themselves to be prejudiced by them but were to consider them only for the purposes for which they were offered.

Dr. Edward A. Strecker testified for defendant as a psychiatric expert. On cross-examination he was asked whether he thought defendant might kill again to which he answered: "I think it is possible that he might. You couldn't be sure." Defendant urges that it was prejudicial error to allow the witness to answer that question. It is sufficient to say that since the question was not objected to by defendant's counsel, it need not be considered on appeal: *Commonwealth v. Luccitti,* 295 Pa. 190, 196, 145 A. 85.

Defendant raises the question of the trial judge's failure to charge on the presumption of innocence. That point is not seriously pressed on this appeal nor could it be in view of the court's repeated instructions to the jury that the Commonwealth had the never shifting burden of proving defendant guilty beyond a reasonable doubt. Since that statement is equivalent to saying the defendant is presumed to be innocent, it satisfies the requirements of the law in that respect: *Commonwealth v. Corrie*, 302 Pa. 431, 437, 153 A. 743; *Commonwealth v. Russogulo*, 263 Pa. 93, 103, 106 A. 180.

Defendant contends that the trial judge erred in instructing the jury that in a felonious malicious homicide the specific intent to kill is the essence of first degree murder and if there is such an intent with sufficient time to deliberate and premeditate, the crime is murder in the first degree. Defendant asserts that this instruction considers only whether he had time for deliberation and premeditation and not whether he did in fact deliberate and premeditate. This portion of the charge fully conformed to the charge in *Commonwealth v. Drum*, 58 Pa. 9, 16, which has long been established as a model for cases of this nature. It was clearly correct to charge that if the intention to kill existed, defendant was guilty of murder in the first degree. "Such intent supplies the qualities of willfulness, deliberation and premeditation otherwise essential, by the statute, to murder in the first degree.": *Commonwealth v. Samuel Jones*, 355 Pa. 522, 526, 50 A. 2d 317. See also *Commonwealth v. Malone*, 354 Pa. 180, 183, 47 A. 2d 445; *Commonwealth v. Divomte*, 262 Pa. 504, 507, 105 A. 821. There must, of course, be sufficient time, however short it may actually be, for a person to deliberate and premeditate in order to form that intent. But those elements serve merely as guides for the jurors to prevent them from finding an intent where none in fact could have existed. That is pre-

cisely the effect of the charge in this case and we are in full accord with it.

Defendant next alleges that it was error for the court to instruct the jury that from the use of a deadly weapon, a presumption of the intent to kill arises. He maintains that such a presumption takes from the jury the right to find whether that intent did exist. In answer to this it is sufficient to say that the statement of the learned trial judge was in complete conformity with *Commonwealth v. Drum,* supra at p. 17, as well as charges we approved in *Commonwealth v. Green,* 294 Pa. 573, 579, 144 A. 743; *Commonwealth v. Blakeley,* 274 Pa. 100, 105, 117 A. 685; *Commonwealth v. Lacie,* 256 Pa. 526, 100 A. 974; *Commonwealth v. Boyd,* 246 Pa. 529, 535, 92 A. 705. That presumption is not, as defendant contends, a presumption of law; it is merely a presumption of fact which permits the jury to find intent from the use of a deadly weapon: *Commonwealth v. Gidaro,* 363 Pa. 472, 478, 70 A. 2d 359; *Commonwealth v. Prenni,* 357 Pa. 572, 575, 55 A. 2d 532; *Commonwealth v. Robinson,* 305 Pa. 302, 310, 157 A. 689. That this is true is made apparent by the fact that it is quite frequently spoken of as an inference rather than a presumption: *Commonwealth v. Steele,* 362 Pa. 427, 430, 66 A. 2d 825; *Commonwealth v. Chapman,* 359 Pa. 164, 167, 58 A. 2d 433; *Commonwealth v. Holley,* 358 Pa. 296, 302, 56 A. 2d 546. While we agree it is preferable in charging a jury to call it an inference, the two forms are interchangeable. A presumption of fact is nothing more than a prima facie inference: *Commonwealth v. Kluska,* 333 Pa. 65, 69, 3 A. 2d 398. That this presumption is a reasonable one founded on human experience is obvious. One does not normally use a deadly weapon on a vital part of another's body unless he intends to kill. The law could not properly perform its function in society if it were to ignore such fundamental truisms. As we said in *Commonwealth v.*

*Wucherer,* 351 Pa. 305, 312, 41 A. 2d 574: ". . . there is no reason why a person charged with crime should be exempt from the ordinary presumptions or inferences which attach to the acts of men in all other relations of life . . ."

Defendant's principal argument is that the trial judge erroneously withdrew second degree murder from the jury. It is a basic rule that in cases of felonious homicides the jury must fix the degree and withdrawing that function from them is prejudicial error requiring a new trial: *Commonwealth v. Foster,* 364 Pa. 288, 291, 72 A. 2d 279; *Commonwealth v. Ferko,* 269 Pa. 39, 112 A. 38; *Lane v. The Commonwealth,* 59 Pa. 371. In support of this contention that such error exists here, defendant has set forth two separate excerpts from the charge.

The first of these is the statement that "In the case which you are trying we have to deal only with the kind of murder described as 'Willful, deliberate and premeditated'." That statement, standing alone, is in substance identical to the one condemned in *Commonwealth v. Frucci,* 216 Pa. 84, 85, 64 A. 879. However, when the statement in the *Frucci* case and the one in this case are read in their contexts it is readily apparent that there is a vast difference in the meanings they conveyed to the jury. In the *Frucci* case the statement complained of followed immediately after the statutory definition of murder, thus creating the impression that second degree murder as well as all other means of committing first degree murder were to be eliminated from consideration. In this case, on the other hand, after the trial judge read the statutory definition of murder he went on to say: "You will note that under this Act murder in the first degree may be poison or lying in wait. There is no evidence of such means in this case. Or, it may be any willful, deliberate and premeditated killing. In the case which you are

trying we have to deal only with the kind of murder described as 'Willful, deliberate and premeditated'." Following that he discussed those elements of first degree murder and then proceeded to define and explain second degree murder. From that it is quite clear that the trial judge was not removing second degree murder from the consideration of the jury but rather was eliminating only the other methods of killing which constitute first degree murder. That was to defendant's advantage and was clearly correct: *Commonwealth v. Del Giorno*, 303 Pa. 509, 517, 154 A. 786; *Commonwealth v. Drum*, supra at p. 16.

The other statement which defendant alleges withdrew second degree murder from the jury is found in the closing paragraph of the charge. There the court in stating the possible verdicts that the jury could return, did not include second degree murder. However, it is elementary that the charge must be read as a whole and its correctness and adequacy determined from that reading: *Commonwealth v. Thompson*, 321 Pa. 327, 330, 184 A. 97. Here the learned trial judge defined and explained murder in the second degree competently and thoroughly. He explained with equal clarity that the jury had the sole right to determine the degree of murder of which defendant was guilty. In fact, immediately prior to the portion of the charge here complained of, he said: "If you are convinced beyond a reasonable doubt as to the defendant's guilt, then it is your duty to convict him and *to fix the degree you are convinced beyond a reasonable doubt of which he is guilty.*" (Italics added). Then, immediately following the complained of statement, he read to the jury those of defendant's points which he affirmed. The last one of these, and consequently the last words said to the jury before they retired, was as follows: "If the jury believes that the killing of Marian Louise Baker was not a willful, deliberate and premeditated killing, their

verdict must be murder in second degree." That point when read to the jury became a part of the charge and must be considered with it: *Commonwealth v. Payne*, 242 Pa. 394, 401, 89 A. 559; *Commonwealth v. Brown*, 58 Pa. Superior Ct. 300, 309.

Certainly when these instructions, including the above quoted point submitted by counsel for defendant, are read in their entirety it is quite clear that the jury was not deprived of the right to fix the degree of the crime. It is not necessary for the court in every part of its charge to reiterate to the jury their right to fix the degree: *Commonwealth v. Bishop*, 285 Pa. 49, 58, 131 A. 657. See also *Commonwealth v. Gable*, 323 Pa. 449, 454, 187 A. 393; *Commonwealth v. Mc-Manus*, 282 Pa. 25, 28, 127 A. 316. But if the charge amounts to a binding instruction to find defendant guilty of murder in the first degree, if guilty at all, the jury's right to fix the degree is destroyed: *Commonwealth v. Ferko*, supra; *Commonwealth v. Fellows*, 212 Pa. 297, 300, 61 A. 922. The cases convincingly demonstrate that this charge did not amount to a binding instruction.

In *Commonwealth v. Kovovic*, 209 Pa. 465, 469, 58 A. 857, the jury was instructed that their verdict should be murder in the first degree or not guilty. This was held not to be error where the judge had previously instructed them on their duty to fix the degree. That is precisely the situation here. Likewise in *Commonwealth v. Hollinger*, 190 Pa. 155, 157, 42 A. 548, the fact that the jury was not in express terms told they might find defendant guilty of murder in the second degree was held not error.

Nor are those cases extreme examples. In *McMeen v. Commonwealth*, 114 Pa. 300, 9 A. 878, this Court affirmed a charge which stated, at p. 303: "If the defendant murdered his wife by means of poison it would be murder in the first degree, and *the jury needs neither*

*definition nor instruction in regard to any other kind of homicide."* (Italics added). And in *Shaffner v. Commonwealth,* 72 Pa. 60, 64, a charge was held to be proper which stated: ". . . if the prisoner is guilty at all, there can be no difficulty in ascertaining the degree of guilt, for, being by poison, *it must necessarily be murder of the first degree . . ."* (Italics added).

From these cases it can at once be seen that as long as the final decision on the degree of guilt is left to the jury, the law is satisfied and this is true even though strong expressions of the judge may to some extent influence the jury. In the instant case, from the thoroughness of the admittedly unbiased charge, the completeness of the explanation to the jury of their rights and duties, and the inclusion of defendant's point, the jurors unquestionably understood that they alone had the right to determine what the verdict was to be and that second degree murder was one of the possible verdicts.

The evidence in this case presents a picture of a brutal and ruthless crime committed by this defendant and fully justifies the extreme penalty imposed by the verdict of the jury. Able counsel represented defendant in all stages of the proceedings and made a strong, persuasive argument before the bar of this Court. Nevertheless, we find no error in the record of this case. The sentence imposed should, therefore, be carried out.

The judgment and sentence is affirmed.